IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Lisa S., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 20-cv-50415 |
| v. ) | |
| ) | Magistrate Judge Margaret J. Schneider |
| Martin J. O'Malley, ) | |
| Commissioner of Social Security[1], ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Lisa S., seeks review of the final decision of the Commissioner of the Social Security Administration denying her disability benefits. The parties have filed cross motions for summary judgment [21], [24]. For the reasons set forth below, Plaintiff's motion for summary judgment [21] is denied and the Commissioner's motion for summary judgment [24], is granted. The final decision of the Commissioner denying benefits is affirmed.

**BACKGROUND**

A. Procedural History

On October 5, 2017, Lisa S. ("Plaintiff") filed for disability insurance benefits alleging disability beginning May 10, 2011. On February 1, 2018, the Social Security Administration ("Commissioner") denied her application, and upon reconsideration on July 25, 2018. R. 14. Plaintiff filed a written request for a hearing and a video hearing was held on July 16, 2019. At the hearing, Plaintiff appeared and testified. Tiffany Sanders, M.D., an impartial medical expert, and Susan A. Entenberg, an impartial vocational expert, also appeared and testified. At the hearing, Plaintiff amended her onset date of disability from May 10, 2011, to October 21, 2013, the day Plaintiff stopped working and underwent surgery. *Id*.

On January 3. 2020, the ALJ issued her written opinion finding that Plaintiff was disabled within the meaning of the Social Security Act, from October 21, 2013, through January 23, 2017. R. 15. The ALJ found that on January 24, 2017, medical improvement occurred that was related to Plaintiff's ability to work, and therefore Plaintiff had been able to perform substantial gainful activity from that date through the date of decision. Therefore, Plaintiff's disability ended on January 24, 2017. *Id*. Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 1-6. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g);

---

[1] Martin J. O'Malley has been substituted for Kilolo Kijakazi. Fed. R. Civ. P. 25(d).

*Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c) [6]. Now before the Court are Plaintiff's motion for summary judgment [21] and the Commissioner's cross-motion for summary judgment and response to Plaintiff's motion for summary judgment [24]. Plaintiff filed a reply brief as well [25].

    B.  The ALJ's Decision

In her ruling, the ALJ found that Plaintiff was disabled October 21, 2013, through January 23, 2017. She then found medical improvement occurred relative to Plaintiff's ability to work and, therefore, Plaintiff's disability ended on January 24, 2017. R. 15. The ALJ applied the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 21, 2013. R. 18. At step two, the ALJ found that from October 21, 2013, through January 23, 2017, Plaintiff had the following severe impairments: degenerative disc disease status post laminectomy and fusion in October 2013 with subsequent revision surgery in April 2015, and obesity. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that from October 21, 2013, through January 23, 2017, Plaintiff did not have an impairment or combination or impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 20.

Before step four, the ALJ found that from October 21, 2013, through January 23, 2017, Plaintiff had a residual functional capacity ("RFC") to perform light work except occasional operation of foot controls, no climbing ladders, ropes, or scaffolds, occasional climbing ramps or stairs, occasional balancing, stooping, crawling but no crouching or kneeling; avoid all exposure to use of dangerous moving machinery and unprotected heights and is likely to be off task more than 15% of the workday. R. 21. At step four, the ALJ found that from October 21, 2013, through January 23 ,2017, Plaintiff was unable to perform any past relevant work. R. 26. Finally, at step five, the ALJ found that from October 21, 2013, through January 23, 2017, considering Plaintiff's age, education, work experience, and RFC, there were no jobs that existed in significant numbers in the national economy that Plaintiff could have performed. *Id*. The ALJ concluded that from October 21, 2013, through January 23, 2017, Plaintiff was unable to make a successful vocational adjustment to work that existed in significant numbers in the national economy and, therefore, Plaintiff was disabled under the Social Security Act. R. 27.

Next, the ALJ applied the statutorily required factors for medical improvement found at 20 CFR § 404.1594 and concluded that medical improvement (related to Plaintiff's ability to work) occurred as of January 24, 2017, the date Plaintiff's disability ended, which altered Plaintiff's RFC enough that allowed Plaintiff to work. R. 27-35.

Specifically, the ALJ found that beginning January 24, 2017, Plaintiff had the RFC to perform light work except no climbing ladders, ropes, or scaffolds but could occasionally climb ramps and stairs, and occasionally balance, stoop, crawl, crouch, and kneel. Plaintiff would have to avoid all exposure to use of dangerous moving machinery and unprotected heights. Plaintiff would have to be permitted a sit/stand option that would allow performing work at a workstation while sitting or standing and changing positions every hour, so as not to be off task more than 10%

of the workday. R. 28. Next, the ALJ found that beginning January 24, 2017, Plaintiff was capable of performing past relevant work as an audio assembler-repair tech, caregiver, and union representative. This work, according to the ALJ, did not require the performance of work-related activities precluded by Plaintiff's 2013-2017 RFC. R. 35. Therefore, the ALJ concluded that beginning January 24, 2017, Plaintiff was not under a disability as defined by the Social Security Act and had not been under a disability through the date of decision, January 3, 2020.

## STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is "more than a mere scintilla." *Wright v. Kijakazi*, No. 20-2715, 2021 WL 3832347, at *5 (7th Cir. 2021). "Whatever the meaning of 'substantial' in other contexts, the Supreme Court has emphasized, 'the threshold for such evidentiary sufficiency is not high.'" *Id*. (quoting *Biestek*, 139 S.Ct. at 1153). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations, *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at *7 (N.D. Ill. Feb. 27, 2013). As the Seventh Circuit has made clear, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054.

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (citations and quotations omitted). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility. [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). Additionally, an ALJ "need not specifically address every piece of evidence, but must provide a logical bridge between the evidence and his conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (citations and quotations omitted). *See also Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

## DISCUSSION

The issue Plaintiff raises in this case is whether the ALJ provided adequate support to find that Plaintiff medically improved during the relevant time period – January 24, 2017, through the date of decision, January 3, 2020. Plaintiff argues the ALJ (1) erred in the listing analysis for listing 1.04A; (2) did not properly confront the Plaintiff's functional capacity exams (FCE) in relation to the RFC, and (3) failed to adequate address Plaintiff's chronic pain by failing to explain why she

3

did not include an off-task limitation. The Court finds that the ALJ's determinations were supported by substantial evidence. Therefore, the decision is affirmed.

As a brief background, Plaintiff injured her back at work on May 6, 2011. [21], p. 1. Despite physical therapy, Plaintiff continued to suffer from back pain and numbness down her left leg. Plaintiff underwent a disc fusion surgery in October 2013 and showed some improvement through January 2014. [21], p. 2. Plaintiff had a second fusion surgery in April 2015. By December 2015, Plaintiff began to again experience pain down her leg and into her foot. An MRI in March 2016 revealed Plaintiff to have bilateral foraminal narrowing and neutral foramina narrowing at L5-S1 as well as mild loss of disc signal at L3-L4. *Id*. Plaintiff underwent a functional capacity exam (FCE) in July 2016. [21], pp. 2-3. Plaintiff continued to experience leg problems and discomfort and pain with the straight leg raise. It was recommended that Plaintiff consider a spinal cord stimulator. After a trial period with the stimulator, Plaintiff reported to be 50% improved. [21], 3. On January 23, 2017, Plaintiff underwent full placement of the spinal cord stimulator. *Id*. As noted above, Plaintiff was found to be disabled from October 21, 2013, through January 23, 2017. The ALJ found medical improvement beginning January 24, 2017. Plaintiff's appeal of the ALJ's decision is predicated on the finding of no disability after January 24, 2017.

At step three of the ALJ's analysis, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meet or equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Plaintiff argues the ALJ erred in finding that she did not meet or equal listing 1.04(A).

If an ALJ determines that a claimant meets or equals the severity of a listed impairment, the claimant is presumptively disabled. 20 C.F.R. § 404.1520(d); *Cathy D.H. v. O'Malley*, No. 21 C 5992, 2024 WL 3177431, at *2 (N.D. Ill. June 26, 2024). Listing 1.04 includes spinal disorders including spinal stenosis, degenerative disc disease, and vertebral fractures, resulting in compromise of a nerve root or the spinal cord, with evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. It also requires, in relevant part, "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test." *Id*.; *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).

The ALJ determined that from October 21, 2013, through January 23, 2017, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment included in the listing – here, listing 1.04(A). In support of this finding, the ALJ summarized and analyzed relevant medical records. R. 20-21. However, as noted above, after the ALJ's RFC finding, the ALJ concluded that Plaintiff was disabled during that timeframe because she was unable to perform any past relevant work and there were no jobs that existed in significant numbers in the national economy that Plaintiff could have performed. R. 26. As to the time period beginning January 24, 2017, in the listings analysis, the ALJ likewise found that Plaintiff did not have an impairment or combination of impairments that would meet or equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1594(f)(2)). As noted by Plaintiff, the ALJ found that Plaintiff had not developed any new impairment or

4

impairments since January 24, 2017, therefore, the severity of her impairments for that time period would be the same as those present from October 21, 2013, through January 23, 2017. R. 27.

An impairment that satisfies a listing renders a claimant disabled. 20 C.F.R. § 404.1520(a)(4)(iii). "The Listings involve cases where the impairment is so severe that there is no need to evaluate the limits of what a claimant can actually do; thus, if a claimant satisfies the requirements of a Listing, she is presumptively disabled and no further consideration is required." *Cathy D.H. v. O'Malley*, No. 21 C 5992, 2024 WL 3177431, at *2 (N.D. Ill. June 26, 2024) (citations and quotations omitted). "The regulations make clear that a disorder under Listing 1.04 is evident only if all the listing's criteria are met." *Jeske v. Saul*, 955 F.3d 583, 590 (7th Cir. 2020). Plaintiff argues that while the records show a history of nerve root impingement and evidence of strength and neurological deficit, the ALJ's listings analysis (from the closed period) failed to acknowledge this. "To meet or equal a listed impairment, the claimant must satisfy all of the criteria of the listed impairment. The claimant bears the burden of proving his condition meets or equals a listed impairment." *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999) (citations and quotations omitted).

The ALJ's findings that Plaintiff did not meet or equal a listed impairment were based on a review of Plaintiff's medical records as well as the state agency medical consultants and the impartial medical expert, Dr. Tiffany Sanders, who all opined that Plaintiff's physical impairments did not meet or equal any listed impairment. As the ALJ explained, as to Plaintiff's medical records, there was no evidence of severe spinal stenosis, nerve root impingement, strength deficit, or neurological deficit, on exams. A 2014 MRI noted no new suspicious marrow lesion or edema, lower cord remained normal, and there was no evidence of new disc herniation or significant bulges. R. 20. Significantly, listing 1.04 requires evidence of disc disease, stenosis, or fractures of nerve root compression resulting in a compromise of the nerve root or spinal cord, with evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis. The ALJ's adequate analysis of Plaintiff's medical history supports the finding that Plaintiff's condition did not satisfy the listing requirements. Additionally, following Plaintiff's January 2017 surgery, the records support a finding that Plaintiff had no nerve root impingement, as required for a 1.04 listing.

The Court does note the ALJ, in the listings analysis, specifically refers to "the medical evidence summarized below" – referring to the RFC analysis. *Id.* Plaintiff takes issue with this, arguing that the ALJ did not address and analyze Plaintiff's medical history within the listing analysis at step three. However, it is well-recognized that "when an ALJ explains how the evidence reveals a claimant's functional capacity, that discussion may doubly explain how the evidence shows the claimant's impairment is not presumptively disabling under the pertinent listing. And, as we've already recognized, '[t]o require the ALJ to repeat such a discussion throughout [the] decision would be redundant.'" *Jeske*, 955 F.3d at 590, quoting *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015). Therefore, the Court is unpersuaded that the ALJ did a less-than-adequate job of its listings analysis by referring to its analysis in the RFC. The RFC analysis is thorough and detailed, beginning with Plaintiff's 2011 work-related injury and extending to Plaintiff's spinal cord stimulator implant procedure and subsequent report of significant improvement. R. 21-25. For these reasons, the Court finds the ALJ's listings 1.04 analysis without error. Specifically, the Court observes that the ALJ properly reviewed Plaintiff's medical records and took into account the state agency medical consultants' and the impartial medical expert's opinions that Plaintiff did

5

not meet or medically equal a listing. Further, because the ALJ found that the records showed that Plaintiff medically improved beginning January 24, 2017, it was proper to rely on the finding the ALJ had already made as to the closed period of disability that Plaintiff did not satisfy the listing criteria without further explanation.

Plaintiff also argues that the ALJ failed to properly confront Plaintiff's functional capacity exam (FCE) in relation to the RFC analysis. Plaintiff completed two FCEs. The first FCE (July 7-8, 2016) noted Plaintiff had limited tolerance to sustained positions of kneeling, crouching, mid-level reaching, elevated reaching, standing, and sitting. R. 563-72. She utilized her arms for support when performing ladder climb, stair climb, and walking activities, and would frequently stretch during or after activities. The FCE noted Plaintiff's quality of motion was generally smooth and symmetrical with the exception of a slight antalgic gait and pain increase, and she demonstrated a consistent performance through the exam. While her pace was below competitive standards, Plaintiff was able to perform all tasks and was given a medium work-level ability. *Id*. Plaintiff underwent a second FCE on August 23, 2017. R. 645-51. That exam concluded that Plaintiff's demonstrated physical demand level was sedentary to light. It recommended balancing, crawling, and left and right foot controls on an occasional basis, and bending, stooping, crouching, kneeling, squatting and taking stairs, on a minimally occasional basis. R. 645.

With respect to the RFC evaluation during Plaintiff's closed period of disability (October 21, 2013, through January 23, 2017), the ALJ noted that Plaintiff underwent an FCE in July 2016 and summarized the findings. The ALJ's decision detailed Plaintiff's medical history through 2016 and up to the spinal cord stimulator implant in January 2017. R. 24-25. The ALJ then concluded that based on her review of the record, Plaintiff's medical condition at that time would affect her ability to perform more than light work activities. The ALJ further found that Plaintiff was limited in her ability to climb, balance, stoop, or crawl. The ALJ also found that Plaintiff should avoid exposure to the use of dangerous moving machinery and unprotected heights, and that she would likely be off task more than 15% of the workday. R. 25-26. Likewise, the ALJ acknowledged and reviewed Plaintiff's August 2017 FCE. As to that FCE, the ALJ noted it included that Plaintiff should be limited to a 4-hour workday, sitting 1 hour, standing 2 hours, and walking 2-3 hours. R. 29.

The ALJ then engaged in a thorough review of Plaintiff's medical records and history in the RFC determination portion of the decision. There, the ALJ summarized the records from Plaintiff's medical visits from February 2017 through March 2019. Significantly, the ALJ noted that Plaintiff was seen monthly by Dr. Thomas Dahlberg of the Rockford Pain Center. In February 2017, Plaintiff reported to Dr. Dahlberg greater than 50% improvement with intact memory, normal affect, and intact and symmetric pulses in the lower extremities. R. 28. The ALJ's decision also states that by March 2017, Plaintiff reported 70% improvement to Dr. Dahlberg and wanted to return to light duty by May 2017. Dr. Dahlberg told Plaintiff she could return to light duty work by May 2017 with no lifting greater than 20 pounds and could return to full duty work by June 2017 with no restrictions. *Id*. Plaintiff returned to Dr. Dahlberg in August 2017. Plaintiff's examination revealed no clear abnormalities and Plaintiff reported she was still 70% improved but stated that she felt unable to work more than 4 hours at a time because of pain and inquired about disability. Dr. Dahlberg ordered the August 2017 FCE at that time. Post-August 2017 FCE, Plaintiff was seen by an orthopedic surgeon who opined that Plaintiff had reached maximum

6

medical improvement and that no treatment aside from Plaintiff's spinal cord stimulator was necessary. R. 29. In January 2018, Plaintiff was seen by a nurse practitioner for pain and pain management. Following examination, Plaintiff was prescribed Amitriptyline for depression. Later that month, Plaintiff underwent an internal medical examination with consultative physician K.P. Ramchandani, M.D. Plaintiff exhibited no acute distress during the exam and was diagnosed as having lumbar spine arthralgia and radiculopathy of the left lower extremity secondary to degenerative disc disease and obesity. R. 30. In May 2018, Plaintiff returned to Dr. Dahlberg who reprogrammed her spinal cord stimulator. In June 2018, Plaintiff returned to the nurse practitioner to discuss pain management. Plaintiff stated the Amitriptyline was not working so it was discontinued. Plaintiff complained of having some bad days and requested Norco. Plaintiff presented alert, oriented, appropriately interactive, and with a normal gait and normal strength. *Id*. Plaintiff saw Dr. Dahlberg in August 2018 and reported a 35% overall improvement in her back but was still experiencing leg pain. In September 2018, Plaintiff reported 40% pain relief. In September 2018, Plaintiff again saw the nurse practitioner. At that visit, Plaintiff's Norco prescription was refilled although she reported not taking it every day. She was encouraged to engage in physical exercise every day. R. 31. At her December 2018 visit with the nurse practitioner, Plaintiff reported she was taking one Norco a day. Plaintiff saw the nurse practitioner in March 2019. At that visit, Plaintiff reported that she was doing some physical therapy, but had spasms in her left leg. She was continued on Norco. The ALJ's decision includes significant detail of all of these visits as a part of the RFC determination. R. 28-31.

The ALJ decision then took into consideration Plaintiff's statements about her symptoms. The ALJ found that Plaintiff's statements were far outweighed by the "lack of supportive objective findings to show disabling functional limitations beginning January 24, 2017." R. 31. The ALJ noted that while the record reflects that Plaintiff's symptoms did not disappear, "they are less restrictive and disruptive than they were prior to January 23, 2017." *Id*. Finally, after a thorough review of the records from the state psychological consultants, the state agency consultants, and the independent medical examination, the ALJ found that the July 2016 FCE accurately assessed Plaintiff's ability to perform light work at that point in her recovery and assessed her RFC accordingly. R. 33-34. The ALJ then considered the August 2017 FCE. As noted above, that FCE notes a 4-hour work limit. The ALJ found that limitation to be unpersuasive as no doctor recommended such a limitation. R. 34. Specifically, the ALJ found that a limitation of a 4-hour workday was directly in conflict with Dr. Dahlberg's opinion that Plaintiff could return to work May 1, 2017, with a 20-pound lifting restriction, and full-duty work and no restriction as of June 1, 2017. *Id*. The ALJ decision also noted that the 4-hour workday was not supported by other records or data.

Plaintiff argues that some of the restrictions included in the August 2017 FCE are improperly not part of the ALJ's RFC determination. She argues that the ALJ "cherry picked" certain portions of Plaintiff's 2016 FCE and medical record, and ignored other parts of Plaintiff's medical history that did not support the ALJ's conclusions. "The ALJ has an obligation to consider all the relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that suggests a disability finding." *William B. v. Saul*, Case No. 18 CV 50083, 2019 WL 4511544, at *6 (N.D. Ill. Sept. 19, 2019) (citing *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009). Also, while an ALJ "does not need to discuss every piece of evidence in the record…[she] must confront evidence that does not support her conclusion."

*Sherman v. O'Malley*, No. 23-1428, 2023 WL 8868065, at *2 (7th Cir. 2023) (citations and quotations omitted). After a close review of the record, the Court finds that the ALJ properly considered all the evidence – the medical records and opinions by the multiple treating physicians, surgeons, nurse practitioners, physical therapist, state agency medical consultants, independent medical examiners, as well as both functional capacity exams. The ALJ found that some of the limitations contained in the August 2017 FCE were unsupported, as a whole, by the record. The Court agrees with the Commissioner that Plaintiff is asking this Court to improperly reweigh the evidence and place more weight on the FCE findings and less on the record. "A reviewing court 'will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it.'" *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). The Court finds that the ALJ's RFC was based on substantial evidence.

Finally, Plaintiff argues that the ALJ failed to explain why she did not include an off task limitation for Plaintiff's reported chronic pain for the period of time after January 24, 2017. Plaintiff's period of closed disability - October 21, 2013, through January 23, 2017 – included that Plaintiff would likely be off task 15% of the workday. The RFC after January 24, 2017, did not include any such off task limitation. The post-January 24, 2017 RFC does state: "The claimant must be permitted a sit/stand option that allows performing the work at the workstation while sitting or standing and changing positions every hour, so as not to be off task more than 10% of the workday." R. 28. However, as noted above, the ALJ found that Plaintiff medically improved after January 23, 2017. As explained by the ALJ, the record as a whole supports this finding as Plaintiff herself reported improvement after the placement of the spinal cord stimulator. Improvement was reported as high as 70%. This improvement would explain why the ALJ did not place any greater restrictions in the RFC. While Plaintiff cites to the August 2017 FCE, which noted Plaintiff's slow speed, cadence, and movement, the ALJ found the restrictions contained in this FCE unsupported by the record as a whole. Again, the Court will not reweigh the evidence. *Chavez*, 96 F.4th at 1021.

The Court finds that substantial evidence supports the ALJ's determination that Plaintiff medically improved on January 23, 2017, through the date of decision, January 3, 2020, and was able to perform light work. *See Pepper v. Colvin*, 712 F.3d 351, 361-63 (7th Cir. 2013) (substantial evidence supported ALJ determination that plaintiff had the RFC to perform light work where ALJ adequately discussed the issues). The ALJ, in more than adequate detail, set forth the medical record – including details supported by Plaintiff's treating physician, orthopedic surgeon, nurse practitioner, physical therapist, and the testimony of state medical experts. The ALJ formed the basis of the RFC determination and medical improvement based on all of the evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [21] is denied and the Commissioner's motion for summary judgment [24], is granted. The final decision of the Commissioner denying benefits is affirmed.

Date: 08/28/2024             ENTER:

_Margaret J. Schneider_
United States Magistrate Judge